95 P.3d 2

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Minh Ngoe TRAN, Defendant–Appellant.**

No. 23198.

Intermediate Court of Appeals of Hawai'i.

April 10, 2002.

As Amended April 12, 2002.

Certiorari Granted May 17, 2002.

Certiorari Dismissed Aug. 13, 2004.

Dwight C.H. Lum, Honolulu, on the briefs, for defendant-appellant.

Caroline M. Mee, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Minh Ngoe Tran (Defendant) appeals the January 27, 2000 judgment of the circuit court of the first circuit that convicted him, upon a jury's verdict, of one count of robbery in the first degree, in violation of Hawaii Revised Statutes (HRS) § 708–840(1)(b)(ii) (Supp.2001), and sentenced him, as a repeat offender,[1] to a twenty-year indeterminate term of imprisonment subject to a mandatory minimum term of six years and eight months.

We take notice of the court's plain error, similar to the plain error that was noticed by the Hawai'i Supreme Court in *State v. Lema-*

---

1. Minh Ngoe Tran (Defendant) was eligible to be sentenced as a repeat offender because of his August 28, 1996 conviction for promoting a dangerous drug in the second degree, in violation of

*lu,* 72 Haw. 130, 809 P.2d 442 (1991). We therefore vacate the judgment and remand for a new trial, on both of the counts of robbery in the first degree originally charged in this case.

## I. Background.

The April 28, 1999 complaint charged Defendant as follows:

> *COUNT I:* On or about the 15th day of April, 1999, in the City and County of Honolulu, State of Hawaii, MINH NGOE TRAN, while in the course of committing a theft, and while armed with a dangerous instrument, did use force against Thanh Long Vu, a person who was present, with the intent to overcome that person's physical resistance or physical power of resistance, thereby committing the offense of Robbery in the First Degree, in violation of Section 708–840(1)(b)(i) of the Hawaii Revised Statutes.
>
> COUNT II: On or about the 15th day of April, 1999, in the City and County of Honolulu, State of Hawaii, MINH NGOE TRAN, while in the course of committing a theft, and while armed with a dangerous instrument, did threaten the imminent use of force against Thanh Long Vu, a person who was present[,] with intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree, in violation of Section 708–840(1)(b)(ii) of the Hawaii Revised Statutes.

In Count I, Defendant was charged with robbery in the first degree under HRS § 708–840(1)(b)(i) (Supp.2001), which provides that

> [a] person commits the offense of robbery in the first degree if, in the course of committing theft: ... The person is armed with a dangerous instrument and: ... The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance[.]

Hawaii Revised Statutes (HRS) § 712–1242(1)(c) (1993). *See* HRS § 706–606.5 (1993 & Supp. 2001).

(Enumeration omitted.) In Count II, Defendant was charged with robbery in the first degree under HRS § 708–840(1)(b)(ii), which provides that

> [a] person commits the offense of robbery in the first degree if, in the course of committing theft: ... The person is armed with a dangerous instrument and:.... The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

(Enumeration omitted.) [2]

Before the jury trial started, Defendant filed his motion in limine # 2, which asked the court [3] to order the State "to elect between Counts 1 and 2 which are alternative theories of Robbery in the 'First Degree." In his declaration in support of the motion, defense counsel maintained that "Counts 1 and 2 are the same alleged wrongful conduct or a continuing course of conduct presented under alternative theories. Defendant's right to due process of law, requires that the State elect between Counts 1 and 2." The memorandum in support of the motion cited HRS § 701–109 (1993).[4]

At the November 12, 1999 hearing on Defendant's motion in limine # 2, the prosecutor explained why the State charged Defendant as it did:

> [PROSECUTOR]: At first I'd point out that it's the State's prerogative to charge the case however it sees fit, unless there's some legal principle barring the State from doing so.
>
> As the Court pointed out to [defense counsel], this is the same conduct—well, it's different conduct, but it occurred at the same time, and there's two separate acts.
>
> The first act is the—is the defendant demanding money and showing the knife. The second act is hitting the victim with a bottle in an attempt to gain acquiescence to the robbery or to the theft, so there's two separate acts. There's two straight counts. Had we charged it differently, defense would be arguing that we couldn't [ (sic) ] be allowed to because of *Arseyo* [ (sic) ].[5]
>
> THE COURT: They'd ask you to elect.
>
> [PROSECUTOR]: Yes, exactly. I don't have to elect because there's two separate crimes that were committed. They both happen to be robbery in the first degree. And if the defendant is convicted on both

2. HRS § 708–840 (1993 & Supp.2001) provides:
 (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:
 (a) The person attempts to kill another, or intentionally or knowingly inflicts or attempts to inflict serious bodily injury upon another; or
 (b) The person is armed with a dangerous instrument and:
 (i) The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance; or
 (ii) The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.
 (2) As used in this section, "dangerous instrument" means any firearm, whether loaded or not, and whether operable or not, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.
 (3) Robbery in the first degree is a class A felony.

3. The Honorable Reynaldo D. Graulty presided over this case.

4. HRS § 701–109 (1993) provides, in pertinent part, that

> When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:.... One offense is included in the other, ... or.... The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

5. Presumably, *State v. Arceo*, 84 Hawai'i 1, 32–33, 928 P.2d 843, 874–75 (1996) (under circumstances implicating the constitutional right to a unanimous jury verdict, (1) the prosecution must elect the specific act upon which it will rely to establish the conduct element of the offense, or (2) the trial court must give the jury a specific unanimity instruction).

of them, then we merely merge them at time of sentencing.

(Footnote supplied.)

At trial, the prosecutor concluded his closing argument by stating, "The defendant is guilty as charged of Robbery in the First Degree for the threat with the knife, for the crack in the head." Defense counsel commenced his closing argument by informing the jury that "[w]e have the State charging [Defendant] with two charges, two counts, of Robbery in the First Degree out of this particular described conduct that—that Mr. Vu has related to you. Two different theories of how it might have happened, in other words[.]" Defense counsel wound up his closing argument, thus: "Defense urges you to come back with a verdict of not guilty. There was no robbery, there was no dangerous instrument, a knife or a bottle, in a robbery incident. The bottle was a separate incident in a different matter." The prosecutor summed up his rebuttal argument by urging the jury that "the evidence supports only one conclusion, that the defendant is guilty as charged in Counts I and II, both counts, Robbery in the First Degree and nothing less. Thank you."

The court included in its jury instructions the following instruction:

The defendant is charged with more than one offense under separate counts in the complaint. Each count and the evidence that applies to that count is to be considered separately. The fact that you may find the defendant not guilty or guilty of one of the counts charged does not mean that you must reach the same verdict with respect to the other count charged.

The court also instructed the jury as follows:

As to Count I, you may bring in one of the following verdicts:

1) Not guilty; or

2) Guilty as charged; or

3) Guilty of the Included Offense of Robbery in the Second Degree.

As to Count II, you may bring in one of the following verdicts:

1) Not guilty; or

2) Guilty as charged; or

3) Guilty of the Included Offense of Robbery in the Second Degree.

Your verdict must be unanimous as to each count.

After verdicts have been reached and your foreperson has signed aND dated the verdict forms, you will notify the bailiff and court will be reconvened to receive the verdicts.

You may at any time during your deliberations return a verdict with respect to a count to which you can agree even though you may not be able to reach agreement as to the other count.

On November 17, 1999, the jury found Defendant guilty of both Count I and Count II. The first of the two verdict forms signed by the jury foreperson and returned to the court read as follows: "WE THE JURY in this case as to Count I find the Defendant Guilty as charged." The second of the two was identical, except for the substitution of "Count II" for "Count I." The record does not reveal what other verdict forms were tendered to the jury, but we assume that the court tendered a not-guilty verdict form and a guilty-of-the-lesser-included-offense verdict form, as well as a guilty verdict form, for each of Count I and Count II, consistent with its jury instructions.

At the January 27, 2000 sentencing hearing, the prosecutor reminded the court:

[PROSECUTOR]: I do, however, Your Honor—as we discussed in the motions in limine, it's proper I believe that the defendant only be convicted on one of the counts because they do merge. I just ask that the Court leave the count involving the knife as the one that gets sentence [ (sic) ].

[THE COURT]: That would be Count 1?

[PROSECUTOR]: I believe it's Count 2. I looked at the complaint. So if Your Honor wouldn't mind double-checking—

[THE COURT]: Count 1 is with intent to overcome the power of resistance while armed with a dangerous instrument. So that would be Count 1. And Count 2, threatening imminent use of force. And I believe that would be the bottle. Count 2

also says while armed with a dangerous instrument. And I forget—

[PROSECUTOR]: And in any event Your Honor, I think they would merge. And for the purposes of appeal, I think there's substantial evidence on both of the counts, and the jury did find him guilty on both of the counts.

[THE COURT]: Just give me a moment. Count 2, in which the knife was alleged to have been used and the defendant was found to have used the knife while committing the theft. So you are correct, [Mr. Prosecutor].

[PROSECUTOR]: So I would just ask that the Court merge Count 1 into Count 2 and sentence defendant only in Count 2.

[THE COURT]: All right. Very well. [Mr. Defense Counsel], may I have your recommendations?

[DEFENSE COUNSEL]: We received a copy of presentence investigation. There are no substantial changes and we request that they be made a part of the record.

As indicated, Defendant's attorney did not address the issue of merger, but instead proceeded to argue sentencing issues. Consequently, Count I was merged into Count II, and Defendant was convicted of only one count of robbery in the first degree, a violation of HRS § 708-840(1)(b)(ii), under Count II.

## II. Discussion.

### A. The Lemalu Problem.

Defendant raises various issues on appeal, one of which attacks the sufficiency of the evidence adduced at trial. None of them involve the manner in which the single offense of robbery in the first degree was charged or instructed in this case. And Defendant's trial counsel did not object on that basis, other than to ask the court, in Defendant's motion in limine #2, to order the

State to make an election between the two counts.

In *Lemalu, supra,* the defendant, Aukusitino L. Lemalu (Lemalu), was charged with one offense of driving under the influence of intoxicating liquor (DUI), a violation of HRS § 291-4(a) (1985),[6] in two separate counts of the complaint. The first count charged Lemalu with violating HRS § 291-4(a)(1), which the *Lemalu* court characterized as "driving under the influence[.]" The second count charged Lemalu with violating HRS § 291-4(a)(2), which the *Lemalu* court characterized as "driving with a blood alcohol level of 0.10 percent or more[.]" *Lemalu,* 72 Haw. at 131-32, 809 P.2d at 443.

Before trial, Lemalu filed a motion to dismiss the complaint, asserting that the two counts charging a single offense would lead the jury to believe, instead, that two separate offenses were being charged. The trial court denied Lemalu's motion to dismiss, and both counts were submitted to a jury. The jury found Lemalu not guilty under the first count, the subsection (a)(1) violation, but guilty under the second count, the subsection (a)(2) violation. The trial court thereupon entered a judgment of acquittal as to the first count, and a judgment of conviction as to the second count. *Id.* at 132-33, 809 P.2d at 444.

Lemalu's points on appeal were characterized and disposed of by the supreme court, as follows:

On appeal, Lemalu asserts that the trial court erred in denying his motion to dismiss the complaint based on his contention that the use of two counts to charge a single offense of DUI rendered the complaint defective and violated his due process rights. Alternatively, Lemalu asserts that he was twice placed in jeopardy when both counts were submitted to the jury. Lemalu contends that the trial court should have required that the State elect

---

6. HRS § 291-4(a) (1985) provided:
 (a) A person commits the offense of driving under the influence of intoxicating liquor if:
 (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

only one count under which to proceed. We do not agree with these assertions. *Id.* at 132, 809 P.2d at 443. However, the supreme court noticed and concluded that

> there was substantial prejudice created by the use of particular jury instructions combined with multiple verdict forms, which may have led the jury to believe that Lemalu was charged with two separate offenses rather than one. We find such prejudice to be plain error, and therefore vacate Lemalu's conviction and remand for retrial.

*Id.*

The offending jury instructions given in *Lemalu,* "designated as Court's Instruction No. 16 and No. 17, respectively[,]" were as follows:

> The defendant is charged with **more than one offense under separate counts** in the complaint. Each offense with the evidence applicable thereto is to be considered separately. The fact that you may find the defendant not guilty of one of the offenses charged does not mean that you must necessarily reach the same verdict with respect to any other offense charged.
>
> In this case there are 2 counts, **each charging a separate crime.** You may at any time during your deliberations return a verdict or verdicts with respect to one or more counts to which you can agree even though you may not be able to reach agreement as to all 2 counts.

*Id.* at 136, 809 P.2d at 445 (bold emphases in the original).

The supreme court made it "clear that both Instruction Nos. 16 and 17, either alone or together, erroneously gave the jury the impression that the two-count DUI charge constituted two separate crimes." *Id.* at 137, 809 P.2d at 446. The supreme court further noted that two verdict forms for each count, one guilty and one not guilty, had been tendered to the jury, and that "[t]he problem created by the giving of both instructions was compounded by the use of multiple verdict forms." *Id.* The supreme court observed, in addition, that "[t]he problem with the instructions and the multiple verdict forms was then further compounded by the

giving of Court's Instruction No. 19[,]" as follows:

> You may bring in either one of the following verdicts:
>
> 1. Not guilty; or
>
> 2. Guilty as charged.
>
> Your verdict must be unanimous.
>
> After a verdict has been reached and your foreperson has signed and dated the verdict form, you will notify the bailiff, and Court will be reconvened to receive the verdict.

*Id.* at 138, 809 P.2d at 446. The Lemalu court reasoned:

> Considering that the jury was instructed to return either a "not guilty" or "guilty as charged" on separate verdict forms for each count and was given Instruction Nos. 16 and 17, we find it highly probable that it was led to believe that the DUI counts against Lemalu constituted separate crimes.

*Id.*

 We fear that the court in our case committed similar errors. As a threshold matter, we again note that Defendant did not object to cognate jury instructions and verdict forms below, and does not raise them in any point on appeal. However, Lemalu had not objected to the jury instructions and verdict forms abjured by the supreme court and did not involve them in any of his points on appeal. On this point, the *Lemalu* court held that

> [a]lthough an error in the instructions to which no objection is made at trial may not be assigned as error on appeal ... and an error in the instructions which is not properly cited in the points on appeal ... will not be considered on appeal, ... appellate courts **may** notice plain errors or defects affecting substantial rights which were not brought to the attention of the court.

*Id.* at 137, 809 P.2d at 446 (citation and internal block quote format omitted; brackets, ellipses and bold emphasis in the original). In light of *Lemalu,* which is on all fours covering this case, we notice the error plain on the face of this case.

■ We concede that the jury instruction in this case that is cognate to Court's Instruction No. 17 in *Lemalu* lacks the reference to separate crimes contained in the first sentence of No. 17. *Id.* at 136, 809 P.2d at 445. We remember, however, that the *Lemalu* court held that "it is clear that both Instruction Nos. 16 and 17, *either alone or together*, erroneously gave the jury the impression that the two-count DUI charge constituted two separate crimes." *Id.* at 137, 809 P.2d at 446 (emphasis supplied). Moreover, we observe that the court exacerbated the problem in this case when it instructed the jury that it could return a verdict of "Guilty of the Included Offense of Robbery in the Second Degree[,]" under each of the two counts of the complaint. We presume the jury followed the court's instructions. *State v. Amorin*, 58 Haw. 623, 629, 574 P.2d 895, 899 (1978). Under the circumstances, Defendant's conviction and sentence cannot stand.

In light of our disposition of this case, we do not reach Defendant's points of error on appeal, except his point on appeal regarding the sufficiency of the evidence. In considering whether to reverse or vacate and remand for a new trial, we must inquire whether there was sufficient evidence to support the charge. *State v. Malufau*, 80 Hawai'i 126, 132, 906 P.2d 612, 618 (1995).

### B. Sufficiency of the Evidence.

#### 1. Opening Statements.

In his opening statement, the prosecutor gave the jury a summary of the two counts of the complaint and the evidence supporting each count:

Now, you'll hear that [complaining witness Thanh Long Vu] and the defendant knew each other from a few years back. The defendant had borrowed money to get stuff to eat back a few years ago on the pier. Mr. Vu was a fisherman. He hadn't seen the defendant for a few years when in Chinatown, the defendant came up and asked for money. When Mr. Vu would not give him the money, the defendant threatened Mr. Vu and then hit Mr. Vu on the head, causing an injury.

He threatened him with a knife and hit him with either a bottle, a big liquor bottle, the type of bottle in a brown bag that he had, or with the butt of a knife because Mr. Vu was not facing in the defendant's direction. He didn't know.

Now, you heard the judge read the complaint. And the defendant is charged in this case with two counts of Robbery in the First Degree. Robbery in the First Degree—one of the things that makes the robbery a Robbery in the First Degree is the use of a dangerous instrument.

In this case, the defendant had a bottle and a knife. And the judge will instruct you on what a dangerous instrument is. But the way something is used to make it a dangerous instrument—and we'll get to that more on closing. But because he was armed with or had a dangerous instrument and did either in Count I attempt to steal and use force—attempt to steal would be the demand for the money; and use of force would be the hit on the head with whatever the items were—that's what he's charged with in Count I.

Count II, although it arises from the same facts, it's a little different under the law. And that is the attempt to steal and a threat of the use of force, the use of a knife, to threaten in attempt to gain acquiescence or attempt to get Mr. Vu to give the defendant money.

. . . .

After the presentation of the evidence, you will find that the defendant is guilty on both counts for Robbery in the First Degree with the threat of the knife and for cracking Mr. Vu in the head. Thank you.

Defense counsel followed with a summary of Defendant's case:

And on that April 15th morning, early, about 5:30 in the morning, [Defendant (or, Minh Tran)] was over there looking for work. And a fellow that he knew, Phuoc, had asked him can you go over and see Vu. See him and tell him I want to see him about some money.

And so Minh Tran followed what Phuoc had asked him to do—went over to what was referred to as the gambling place which was an upstairs room in the parking

lot area off of Nimitz and Kekaulike—actually located at the back corner of the Oahu market.

He went to the parking lot area. There's a ladder that goes up, and there's a dorm and a bouncer. He called out to the bouncer. He wanted to see Vu. And so Vu came to the front, looked down, and Minh Tran called and said, "Phuoc wants to see you." And Mr. Vu just gestured for Minh Tran to get away, just waved him off, and didn't want to come down and talk. So Minh Tran went about his way.

Later in that morning, he was down on the bridge with the other Vietnamese men. And a fellow by the name of Nam approached him. And Nam asked him, "Hey, do you want to go over to the poolhall? There's a Vietnamese poolhall on King Street located above Bale Sandwich restaurant."

So Minh Tran agreed to go. And this is getting somewhat 9:30 in the morning, 10:30, somewhere in that time frame. And so when they went up to go in and until this kind of dark staircase going up, and the evidence will show when Minh Tran started going up, as he wound his way around the stairs, somebody grabbed—that somebody was Vu—and started choking him.

Mr. Vu was—had been drinking and was very upset about being bothered by Phuoc wanting to see him about money. Well, eventually, Minh Tran managed to—when the grip loosened up, he ran away. He turned around and left, walked. And Nam, Mr. Vu, started following him.

And as Minh Tran is walking, he sees these two individuals following, approaching behind him. And he looked around. He's already had this experience of being grabbed and choked. And he saw a beer bottle on the ground. He picked it up. And he said, "Stop following me. I'm going to throw." Then he threw the beer bottle. The beer bottle actually hit Vu on the head or face area. They stopped following at that point in time.

. . . .

And we will be requesting that you find, come back with a verdict of not guilty as to Robbery by either theory—by the use of force or threat of force—that neither one of those will apply.

Thank you.

### 2. Evidence at Trial.

At trial, Honolulu Police Department Officer Derrick Kalahui (Officer Kalahui) testified that on April 15, 1999, he was assigned to the *soi disant* Chinatown area of downtown Honolulu. He responded to a reported robbery on Nimitz Highway, "just makai of River Street." Officer Kalahui arrived at the scene in approximately one minute, and saw Thanh Long Vu (Vu) standing in the median area of Nimitz Highway with a substantial amount of blood "coming down his head and facial area." Officer Kalahui noticed that the blood was fresh and wet, and appeared to be freely flowing. Vu was "pretty shaken up[,]" and in poor English, said that a male had demanded some money, showed a knife from his pocket, and hit him over the head with a bottle. Vu was pointing at the Nimitz Highway bridge over the Nu'uanu River, indicating that his assailant had gone under the bridge. Vu gave a description of the suspect. Officer Kalahui, along with another officer, proceeded to go under the bridge, where they found approximately ten to fifteen "oriental-looking males." None of the men was identified as a suspect. None of the men witnessed the robbery. No suspect was located that day. An ambulance arrived at the scene and treated Vu for his injuries, but Vu refused to go to a hospital.

Vu testified that he is employed as a fisherman, and had been in Hawai'i for almost ten years. Vu said that he had known Defendant since about four years before the robbery, from three occasions in which Defendant asked him for money to eat. Vu said he gave Defendant money each time—one time twenty dollars, another time fifty dollars and another time ten dollars. After those three times, Vu did not see Defendant again for about three-and-a-half years.

According to Vu, on April 15, 1999, he left Huong Restaurant and was walking on River Street to catch a bus on Hotel Street when Defendant approached him. Defendant

asked Vu for twenty dollars. Vu told Defendant that he had no money, and turned to walk away. Defendant then said that he had "just left from prison and would like to ask for twenty dollars." Upon hearing this, Vu turned around and saw that Defendant's facial expression and body language had changed—Defendant looked "[n]ot happy." Vu told Defendant, "I have no money." Defendant then assumed a fighting stance. In one hand, Defendant was holding a big paper bag that was in the shape of a bottle; with the other hand, Defendant removed a knife with a six to eight-inch blade from his left front pocket, displayed it down by his side and then put it back in his pocket. Vu felt "very afraid[,]" and slowly walked away from Defendant. After he had walked about five feet, Vu felt something hit the left side of his head. When Vu turned to look back, he saw Defendant behind him. Vu maintained that he knew it was Defendant who had hit him with the bottle. Lightheaded and in ineffable pain, Vu ran away from Defendant. Vu realized he was bleeding when he felt the injury on his head and saw blood on his hand. Vu called 911 from his cellular phone. The police responded, and an ambulance arrived to treat his injuries. Vu suffered a cut on the left rear portion of the top of his head. Vu recalled that Defendant had a tattoo mark between his eyebrows.

Vu remembered that on the following evening, April 16, 1999, he saw Defendant at a parking lot on Nimitz Highway near a Chinatown establishment called Snack Minato. Vu called the police on his cellular phone. Two police officers arrived and questioned Defendant, but Defendant was not arrested because, Vu maintained, Defendant gave the police a false name. Neither police officer spoke Vietnamese.

The next day, April 17, 1999, Vu saw Defendant again in the same parking lot. This time, Vu took a taxi straight to the police station to ask for help. Vu talked to a Vietnamese-speaking officer, Officer Tai Nguyen (Officer Nguyen). Vu identified Defendant as the person who had robbed him two days earlier, and the police arrested Defendant.

Vu denied that he choked Defendant, slammed Defendant's head into a wall "near the Pho Hoa Restaurant[,]" or chased Defendant with a knife, on April 15 or 16, 1999. Vu confirmed that he did not give Defendant permission to demand money from him, or to hit him on the head.

On cross-examination, Vu admitted that on April 15, 1999, at around 5:30 in the morning, he was at an upstairs "gambling place" near Snack Minato. Vu admitted that someone called up for him from the parking lot, but denied that the caller was Defendant or someone named Phuoc. Vu said, instead, that a friend named Phung came by. Vu also admitted that later that morning, at around 8:00, he was in a "pool place" located "above Bale on King Street[.]" Before he went to the pool hall that day, Vu had talked to a person named Nam. Vu denied, however, ever telling Nam to bring Defendant to the pool hall. Vu maintained that he met Nam, that Nam asked him for money to eat, and that he gave Nam two dollars. Vu then went straight to Sung Huang Restaurant to eat. Vu denied that he grabbed and choked Defendant on the stairway of the pool hall. Vu denied that he and Nam followed Defendant after Defendant ran from the pool hall. Vu also denied that Defendant threw a bottle at him and Nam. Vu said that he did not encounter Defendant until after Vu left the Huang Restaurant.

Vu denied that on the evening of April 16, 1999, Defendant called for him at the gambling establishment to ask why he had charged Defendant with Robbery. Vu also denied that he then chased and caught Defendant and slammed Defendant's head into a wall.

Officer Nguyen testified that on the evening of April 17, 1999, Vu approached him and Officer Bobby Eleccion (Officer Eleccion) as they were sitting in their police car about a block away from the Chinatown police substation. Vu told the officers that he just saw the man who had tried to rob him a few days before. After getting a description of the man from Vu, the officers proceeded to locate a suspect. Vu, who followed with another officer, confirmed that the suspect, Defendant, was the man who had robbed him.

Later on that evening, Officer Nguyen, who is fluent in Vietnamese and English, took a statement from Vu in Vietnamese.

Officer Clement Enoka (Officer Enoka) testified that on the evening of April 17, 1999, he accompanied Vu in an attempt to locate Defendant. During their conversation in his police car, Officer Enoka noticed that Vu had a strong Vietnamese accent, and could only manage basic English sentences. The police officers located four individuals in the area who matched Vu's description of the suspect, and conducted a field show-up. Vu could not identify any of the individuals in the field show-up as the man who had robbed him. However, during the drive back to the Chinatown police substation, near the place Vu initially reported seeing the suspect, Vu looked down the street and said, "There, that's the guy." Officer Enoka then notified the other police officers, who apprehended Defendant and conducted a second field show-up, at which time Vu was able to identify Defendant as the robber. Officer Eleccion proceeded to arrest Defendant. Officer Enoka confirmed that Defendant was not one of the individuals displayed in the first field show-up.

Officer Eleccion testified that he arrested Defendant on the evening of April 17, 1999, at Kekaulike Street and Nimitz Highway. As Officer Eleccion was booking Defendant at the main police station, Defendant gave his name as Minh Nguyen. He was later identified as Minh Tran. When Defendant was asked for his address, he said he "lives on the street." Defendant did not claim that he was injured in any way. Officer Eleccion did not see any injuries on Defendant. Officer Eleccion did notice a tattoo between Defendant's eyebrows. Defendant was cooperative during the booking process and did not have any trouble answering Officer Eleccion's questions.

Defendant was the only defense witness. On direct examination, Defendant gave a different account of the events of April 15, 16 and 17, 1999. Defendant related that on the morning of April 15, 1999, he saw an individual named Phuc, who told him to "go to the gambling place" to look for Vu. At around 5:30 or 6:00 in the morning, Defendant went to the gambling establishment to call for Vu. Defendant remembered that he stayed on the "ground floor" and asked the man sitting at the door to call Vu. According to Defendant, Vu came out, and as soon as Vu saw Defendant, Vu waved Defendant away. As Vu waved Defendant away, Defendant told Vu that Phuc wanted to see Vu "underneath the bridge." Then Defendant left. Defendant denied that he touched Vu at the "gambling place." He maintained that he did not demand twenty dollars from Vu. He insisted that he did not have a bottle in a bag or a knife that day.

Later that morning, around 10:30 to 11:00, Defendant saw Nam in the area of the bridge. Nam asked Defendant to "go with him to the pool house upstairs to play." The pool hall is located above the "Bale bakery sandwich shop" on King Street. Defendant claimed that while he was ascending the stairway to the pool hall, someone grabbed and choked him. When Defendant raised his head, he saw that his assailant was Vu. Defendant asked Vu why Vu had choked him. Vu replied that he did not want Defendant calling him for other people. Defendant explained that other people had asked that he look for Vu. Then, Defendant left and walked towards the harbor.

On his way to the harbor, near Pho Hoa Restaurant, Defendant looked back and saw Nam and Vu about ten feet' behind him. Nam and Vu were talking to each other and looking at him. Defendant thought Nam and Vu were following him. Defendant took five more steps, looked back again and saw that Nam and Vu were still watching him. Defendant recounted, "Then I saw a bottle on the street and I pick it up, then I threw the bottle to him—or to them, because I didn't intend to do anything, I just want to stop them." Defendant maintained that he did not intend to hit them with the bottle, just to stop them from following him. Defendant said he threw the bottle in the direction of Nam and Vu because they were following him and he was afraid of them. After Defendant threw the bottle, he went to the harbor to look for a job. Defendant said he did not look back after throwing the bottle and did not know whether it hit anyone.

The next day, April 16, 1999, around 6:00 in the evening, Defendant returned to the harbor in Chinatown. There, Defendant was told that Vu had called the police, and that Vu had charged him with robbery. Defendant claimed that he was surprised, and so proceeded to "the gambling house" because he knew that Vu was working there. Once there, Defendant asked the man at the door to call Vu. According to Defendant, as soon as Vu saw him from upstairs, Vu ran downstairs very fast, holding a white-colored item in his hand. Defendant did not know for sure what this item was, but thought it might be some kind of weapon, perhaps a gun or a knife. Defendant ran away. Vu chased him and grabbed Defendant by the back of the head in front of Pho Hoa Restaurant. Defendant claimed that Vu pushed him into a glass door and slammed his head into the door, which caused Defendant to bleed a little. One or two minutes later, two policemen arrived. Vu told Defendant that he had called the police. The police did not arrest Defendant. He was released that evening at around 8:30 or 9:00. Defendant said that he still had a mark from having his head slammed into the door. Defendant remembered that he told the police that Vu had assaulted him, but Vu was not arrested.

Defendant returned to the waterfront area of Chinatown again the next evening, April 17, 1999, at around 6:30 or 7:00. Defendant was arrested there and then, for robbing Vu two days earlier.

Defendant insisted that he never asked Vu for money at any time. Defendant said, "I have job, I can go to work, I have place to live, I don't need his money at all." Defendant testified that he was living at his mother's friend's house at the time of the incidents in question. At the end of direct examination, Defendant stated unequivocally that he did not rob Vu on April 15, 1999, and that he did not try to make Vu give him money on April 15, 1999.

On cross-examination, Defendant maintained that he did not know Vu before April 15, 1999. Defendant admitted that he did get into a confrontation with Vu on April 15, 1999, at least part of which took place in front of the Pho Hoa Restaurant, and that

during that confrontation he threw a bottle to stop Vu from following him. Defendant acknowledged the tattoo between his eyebrows. He again denied carrying a knife on April 15, 1999.

### 3. Defendant's Motions for Judgment of Acquittal.

At the close of the State's case, Defendant moved for a judgment of acquittal, arguing that the State had not established a *prima facie* case. The State argued that it had satisfied the material elements of the offense, based on the testimony of Vu: "A knife was brought out of the pocket from the man and then [Vu] was hit on the back of the head. He looked back and saw [Defendant] was there. That is sufficient to prove a prime facie [sic] case." The court denied Defendant's motion for judgment of acquittal. At the close of all evidence, Defendant renewed, without argument, his motion for judgment of acquittal. The State also submitted the motion to the court without argument. Thereupon, the court again denied Defendant's motion for judgment of acquittal.

### 4. Defendant's Arguments on Appeal as to the Sufficiency of the Evidence.

Defendant contends the court erred in denying his motion for judgment of acquittal because there was insufficient evidence to convict him.

The test on appeal for a claim of insufficient evidence is "whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." *State v. Ildefonso*, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992) (citations omitted). *See also State v. Tamura*, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion." *Ildefonso*, 72 Haw. at 577, 827 P.2d at 651 (citation, internal quotations marks and ellipsis omitted). "The jury, as the trier of fact, is the sole judge of the credibility of witnesses or the weight of the evidence." *Tamura*, 63 Haw. at 637–38, 633 P.2d at 1117

(citations omitted). "[V]erdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings." *Tsugawa v. Reinartz*, 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974) (citation and internal quotation marks omitted). "It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for the conviction." *Ildefonso*, 72 Haw. at 576–77, 827 P.2d at 651 (citation and internal quotation marks omitted).

■ On this point on appeal, Defendant first avers there was not substantial evidence to show that he was "in the course of committing theft[,]" HRS § 708–840(1), because there was no evidence that Vu had any money or property to take, or that Defendant took anything of value from him. Defendant points out that Vu told Defendant he had no money. Defendant also points to the lack of evidence that Defendant tried to grab or search Vu.

However, "[a]n act shall be deemed 'in the course of committing a theft' *if it occurs in an attempt to commit theft*, in the commission of theft, or in the flight after the attempt or commission." HRS § 708–842 (1993) (emphasis supplied). Because this material element was satisfied if Defendant was merely attempting to commit theft, the absence of evidence of a completed theft is immaterial, as is the absence of evidence that Vu had any money or property to take. True, Vu told Defendant he had no money. But apparently Defendant did not believe Vu, because he then proceeded to rob Vu. And granted, there was no evidence that Defendant tried to grab or search Vu, but by then Vu was in the process of running away. Given HRS § 708–842, and viewing the evidence in the light most favorable to the State, these points have no merit.

■ Defendant next argues that there was not substantial evidence to show that Defendant had the requisite "intent to compel acquiescence to the taking of or escaping with the property." HRS § 708–840(1)(b)(ii).

On this point, Defendant first argues that the statutory reference to "the property" indicates that some item of property actually had to be taken. We have already disposed of the argument that a completed theft had to be proved. And in any event, the statute refers to Defendant's prospective intent, and not to its actual aftermath.

Defendant also relies upon *State v. Mitsuda*, 86 Hawai'i 37, 947 P.2d 349 (1997), in arguing that "the victim had to actually be aware of the theft." Hence, "[t]here could be no awareness of theft if property was not taken." *Mitsuda* held that "the victim's awareness of the theft is a necessary element of robbery pursuant to HRS § 708–840(1)(b)(ii)." *Id.* at 46, 947 P.2d at 358. *Mitsuda* involved, however, the actual theft of a manicure case. *Id.* at 40, 947 P.2d at 352. Here, we are dealing with an attempted theft. Analogously, we have no difficulty in concluding, on the evidence and consistent with *Mitsuda*, that Vu was aware of the attempted theft.

■ Last, Defendant contends that the circumstances surrounding the display of the knife failed to show that he "threaten[ed] the imminent use of force." HRS § 708–840(1)(b)(ii). In a nutshell, Defendant argues this issue as follows:

According to Vu, he had met [Defendant] on three prior occasions with no negative consequences. (*See* 11/15/99 TR at 43–44). [Defendant] supposedly said that he just left from prison and would like to ask for twenty dollars. *See Id.* at 47. The only logical inference is that [Defendant] needed some money because he had just gotten out of prison. Not that he was a dangerous ex-con.

Vu testified that, [Defendant] showed him a knife and immediately put it back in his pocket. *Id.* at 49. However, [Defendant] did not point the knife at him or try to use it on him. According to Vu, [Defendant] simply put it back in his pocket. There was no further demand for money after that. Even added together, none of this carries the likelihood of force or violence.

We disagree.

The jury could reasonably have inferred that Defendant's display of the knife, coupled

with the reiterated demand for money and Defendant's demeanor and body language, implied that he would use the knife if Vu did not give him the money. In addition, Defendant told Vu that he had just been released from prison. What can be inferred is a display of hardihood, and a willingness to commit crime and carry out threats. Viewing the evidence in the light most favorable to the State, we believe the jury could reasonably have found that Defendant threatened the imminent use of force.

We conclude there was substantial evidence to support the conclusion of the jury. The court did not err in denying Defendant's motion for judgment of acquittal.

### III. Disposition.

We must therefore vacate the January 27, 2000 judgment of the court and remand for retrial. In *Lemalu*, the supreme court confronted the circumstance that the trial court had entered a judgment of acquittal upon the jury's not guilty verdict on the first count of the complaint. Treating the judgment of acquittal as an acquittal "in form only and not in substance," the supreme court vacated the trial court's judgment of conviction and remanded for retrial on both counts of the complaint. *Lemalu*, 72 Haw. at 139–40, 809 P.2d at 447. In this case, the jury returned a verdict of guilty in both counts of the complaint. Although Count I was merged into Count II, no judgment of acquittal was entered. We therefore remand for retrial on both counts of the complaint.